UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
MARIE L. MUSEAU, :
 :
              Plaintiff, :
 : **MEMORANDUM AND ORDER**
           -against- : 12-CV-1851(DLI)(MDG)
 :
HEART SHARE HUMAN SERVICES OF NEW :
YORK, ROMAN CATHOLIC DIOCESE OF :
BROOKLYN, WILLIAM R. GUARINELLO, :
*Individually*, STANLEY CAPELLA, *Individually*, :
MARY JEAN PATELLA, *Individually*, and :
KENNETH CALLAHAN, *Individually*, :
 :
              Defendants. :
---------------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

      Plaintiff Marie L. Museau ("Plaintiff") filed the instant action against defendants Heart Share Human Services of New York ("Heart Share"), the Roman Catholic Diocese of Brooklyn, William R. Guarinello ("Guarinello"), Stanley Capella ("Capella"), Mary Jean Patella ("Patella"), and Kenneth Callahan ("Callahan") (collectively, "Defendants") asserting violations of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107. (*See* Complaint ("Compl."), Dkt. Entry No. 1.)[1] Defendants move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment (*See* Defendants' Motion for Summary Judgment ("Defs.' Mot. for Summ. J."), Dkt. Entry No. 26), which Plaintiff opposes (Plaintiff's Memorandum of Law in Opposition to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), Dkt. Entry No. 27). For the reasons set forth more fully below, summary judgment is granted and the complaint is dismissed in its entirety.

---

[1]     The Court does not construe the Complaint as alleging violations of the New York State Human Rights Law, N.Y. Exec. Law § 296. Plaintiff specifically disclaims such claims in her briefing on this motion. (Pl.'s Opp'n at 7 n.1.)

# BACKGROUND[2]

Heart Share "provides services to the developmentally disabled, children and families in crisis, individuals with HIV/AIDS and youth at locations throughout Brooklyn, Queens and Staten Island." (Defendants Statement of Facts ("Defs.' 56.1"), Dkt. Entry No. 26-3 ¶ 1.)[3] Plaintiff began working at Heart Share in 1999 and was promoted several times, ultimately working as a program director. (Defs.' 56.1 ¶¶ 2-4, 6; Plaintiff's Response to Defs.' 56.1 ("Pl.'s 56.1 Resp."), Dkt. Entry No. 27-1 ¶¶ 2-4, 6.) During the time relevant to this action, Callahan worked for Heart Share and was Plaintiff's direct supervisor. (Defs.' 56.1 ¶¶ 5-7; Pl.'s 56.1 ¶¶ 5-7.) Guarinello was the Chief Executive Officer. (Defs.' 56.1 ¶ 33; Pl.'s 56.1 ¶ 33.) Capella was the Vice President of Quality Management and Corporate Compliance. (Deposition of Stanley Capella ("Capella Depo. Tr."), attached as Exhibit I to the Certification of Marc J. Monte ("Monte Cert."), Dkt. Entry No. 26-4 at 8-9.) Patella was the Vice President of Human Resources. (Defs.' 56.1 ¶ 30; Pl.'s 56.1 ¶ 30.)

On December 19, 2011, Plaintiff applied for a leave of absence for a surgical procedure and recuperation. (Deposition of Marie Museau ("Pl. Depo. Tr."), attached as Exhibit G to the Monte Cert. at 57-58; Staffing Change Blue Form, attached as Exhibit S to the Monte Cert. ("Ex. S").) On December 21, 2011, Plaintiff underwent an outpatient procedure at Woodhull Hospital. (Pl. Depo. Tr. at 125-26.) On January 17, 2012, Plaintiff's physician cleared her for work and she returned to work. (Defs.' 56.1 ¶ 28; Pl.'s 56.1 ¶ 28.) One day later, on January 18, 2012, Callahan informed Plaintiff that she would be laid off effective February 1, 2012, due to a budget shortfall at Heart Share. (Defs.' 56.1 ¶ 29; Pl.'s 56.1 ¶ 29.) Plaintiff contends that Defendants

---

[2]  Except where otherwise stated, the Background is taken from facts that are not genuinely in dispute.
[3]  Plaintiff disputes Heart Share's description of its operations that was taken from its mission statement (Pl.'s 56.1 Resp. ¶ 1); however, Plaintiff has not offered any evidence that this description is inaccurate nor offered any contrasting description. Plaintiff's objection is utterly lacking in merit and irrelevant to resolution of this motion.

interfered with her exercise of her FMLA rights on the grounds that, while she was on leave, Callahan called her several times, asked her to report to work to attend a meeting for which Callahan sent car service to retrieve her, and Defendants made the decision to terminate her. (*See* Pl.'s Opp'n at 3-4, 9-11.) Plaintiff also contends that Defendants terminated her in retaliation for taking her FMLA leave. (*See* Pl.'s Opp'n at 11-13.) Defendants counter both of these claims. (*See* Defendants Memorandum of Law in Support of Defs.' Mot. for Summ. J. ("Defs.' Mem."), Dkt. Entry No. 26-1 at 8-14.) The parties have completed discovery and the facts and circumstances of this case are discussed in greater detail below.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 202 (2d Cir. 1995)

(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F. 3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587.)

## II. Claims Alleging Violations of the FMLA

The FMLA gives eligible employees an "entitlement" to twelve workweeks per year of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). While an employee is on FMLA leave it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). At the end of a FMLA leave, the employee has the right to be restored to the position, or its equivalent, that he or she held prior to taking leave. 29 U.S.C. § 2614(a)(1)(A). However, this right is not absolute. "If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition . . . the employee has no right to restoration to another position under FMLA." 29 C.F.R. § 825.216(c); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F. 3d 155, 161-62 (2d Cir. 1999) ("The fact that Sarno was not restored to his position at the end of that 12-week period did not infringe his FMLA rights because it is also undisputed that at the end of that period he remained unable to perform the essential functions of his . . . position.").

The FMLA expressly creates a private cause of action for equitable relief and money damages against any employer who violates section 2615. *See* 29 U.S.C. § 2617(a)(2); *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003). The Second Circuit recognizes two claims under the FMLA: (i) interference with FMLA rights; and (ii) retaliation for exercising FMLA rights. *See Potenza v. City of New York*, 365 F. 3d 165, 167-68 (2d Cir. 2004); *accord Voltaire v. Homes Servs. Sys., Inc.*, 823 F. Supp. 2d 77, 90 (E.D.N.Y. 2011) ("The Second Circuit recognizes a distinction between claims which allege a violation of § 2615(a)(1)—so

called 'interference' claims—and claims which allege violations of § 2615(a)(2) and (b), which are called 'retaliation' claims."). In this action, Plaintiff asserts both such claims.

### A. Interference

Plaintiff contends that Defendants interfered with her FMLA leave on the grounds that while she was on leave, Callahan called her several times, asked her to report to work to attend a meeting for which Callahan sent car service to retrieve her, and Defendants made the decision to terminate her. (Pl.'s Opp'n at 3-4, 9-11.) Although the Second Circuit has discussed interference claims, it has not yet articulated or identified the standard for resolving such claims. *See Potenza*, 365 F. 3d at 168 (recognizing interference claims, but declining to articulate the appropriate standard for such claims as the claim at issue was one of retaliation, rather than interference); *see also Sista v. CDC Ixis North Am., Inc.*, 445 F. 3d 161, 175-77 (2d Cir. 2006) (affirming summary judgment in favor of defendant-employer as dismissal of the plaintiff-employee's claim was appropriate, "[r]egardless of whether [plaintiff] asserts an 'interference' or a 'retaliation' claim"). Nonetheless, the majority of district judges in this Circuit have coalesced around the same standard for evaluating interference claims. *See Wanamaker v. Westport Bd. of Ed.*, 899 F. Supp. 2d 193, 205 (D. Conn. 2012). To establish a *prima facie* claim of interference with rights under the FMLA, a plaintiff must establish by a preponderance of the evidence that: "(1) she is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by the FMLA." *Esser v. Rainbow Adver. Sales Corp.*, 448 F. Supp. 2d 574, 580 (S.D.N.Y. 2008) (collecting cases).

In this case, Defendants concede that Plaintiff can establish the first three criteria. (Defs.' Mem. at 9.) Moreover, although Plaintiff did not specifically request "FMLA leave" for her surgery and recuperation (*see* Ex. S), Defendants concede that she took medical leave which qualified for protection under the FMLA. (Defs.' Mem. at 9.) Thus, this dispute focuses on the final criterion—whether Defendants denied Plaintiff benefits to which she was entitled under the FMLA. The complaint can be read to assert two types of interference claims: (i) forced to work from home; and (ii) failure to reinstate.

### 1. Forced to Work from Home

Based on the record in this case, the Court can conclude that, as a matter of law, Defendants did not interfere with Plaintiff's FMLA leave under a forced to work from home theory. First, the documentary evidence demonstrates that Plaintiff volunteered to work from home and sought to insert herself into Heart Share's operations at every opportunity. (*See* 1/5/12 Email attached as Exhibit U to the Monte Cert. ("Ex. U"); 1/5/12 Email attached as Exhibit V to the Monte Cert. ("Ex. V"); 12/21/11 Email attached as Exhibit W to the Monte Cert. ("Ex. W"); 12/22/11 Email attached as Exhibit X to the Monte Cert. ("Ex. X"); 1/4/12 Email attached as Exhibit Y to the Monte Cert. ("Ex. Y"); 12/8/11 Email attached as Exhibit Z to the Monte Cert. ("Ex. Z").) For example, at the start of her leave, she sent an email to a colleague indicating that she would be "on medical leave," but she would be "checking [her] e-mail periodically" and he should "[f]eel free to e-mail [her]." (Ex. W.) Remarkably, at her deposition, Plaintiff refused to acknowledge the statements she made in this email. (Pl. Depo. Tr. at 142-43.)

Second, Plaintiff admitted that she did not complain to Callahan or anyone else at Heart Share about being contacted while on leave and did not ask them to stop contacting her. (Pl. Depo. Tr. at 115-16.) In an unpublished summary order, the Second Circuit found such an

7

admission dispositive. *See Matya v. Dexter Corp.*, 250 F. App'x 408, 410 (2d Cir. 2007) (summ. or.) (affirming summary judgment in employer's favor on FLSA interference claim "because [plaintiff] never communicated to his supervisor or otherwise indicated that he would have trouble completing the tasks assigned to him . . . and because [the employer] granted [plaintiff] leave and accommodation on deadlines for his assignments when he requested them"). The record demonstrates that Plaintiff had several opportunities to complain about contact from supervisors or colleagues. For example, when Plaintiff received an organization-wide email regarding a meeting that would occur at Heart Share while she was on leave, Plaintiff could have (i) ignored the email, (ii) informed its sender that she was out of the office on FMLA leave and did not want to receive such emails, (iii) forwarded the email to Callahan indicating that she could not attend the meeting because the meeting would occur during her FMLA leave, or (iv) complained to Callahan or Heart Share's human resources department that she was receiving unwanted contact from Heart Share while on her FMLA leave. Instead, as the undisputed evidence indicates, she sought permission from Callahan to attend. (Ex. V; Pl. Depo. Tr. at 114.)

Third, Plaintiff admitted that no one at Heart Share denied her request to take medical leave when she requested it. (Pl. Depo. Tr. at 195.) In fact, the record demonstrates that Callahan encouraged Plaintiff to "REST" and explained, on at least two occasions, that they could meet to discuss Heart Share's operations when Plaintiff returned to work at the end of her leave. (Exs. X, Y.) Notably, Plaintiff was non-responsive when asked at her deposition about Callahan's directive to "REST." (Pl. Depo. Tr. at 119-21.) In particular, when pressed about the fact that Plaintiff was the only recipient of an email from Callahan containing the directive to "REST," Plaintiff stated that she was "not sure" that the word "REST" was a comment intended for her. (Pl. Depo. Tr. at 119.)

Plaintiff countered all of this evidence by pointing to her deposition testimony, during which she indicated that Callahan called her on her cellular phone several times to discuss "work matters" and that during these calls, Callahan "expressed anger that [Plaintiff] could not return and was on leave" and "coerced [Plaintiff] into coming into work while on leave for a meeting."[4] (Pl.'s Opp'n at 10; Pl. Depo. Tr. at 101.) First, as one court has explained, "[f]ielding occasional calls about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise of an employee's FMLA rights." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009) (granting summary judgment for employer on FMLA interference claim). Indeed, "[w]hen limited to the scope of passing on institutional knowledge to new staff, or providing closure on completed assignments, employers do not violate the FMLA by making such calls." *Id*. (citing *Kesler v. Barris, Sott, Denn & Driker, PLLC*, 482 F. Supp. 2d 886, 910-11 (E.D. Mich. 2007)). Thus, to the extent Callahan occasionally called or emailed Plaintiff to discuss Heart Share's operations while she was on leave, his contact does not rise to the level of interference with Plaintiff's exercise of her rights under the FMLA. Moreover, given that Plaintiff explained that Callahan was responsible for performing her duties while she was on leave (Pl. Depo. Tr. at 153-56), some level of contact would be expected.[5]

Second, while the Court is mindful that it should not make credibility findings, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

---

[4] Plaintiff also testified that she was forced to attend two "webinars" on her home computer while she was on leave. There is no evidence, such as electronic records from her computer or attendance records to corroborate this claim. At her deposition, Plaintiff was unable to provide the dates and times she participated in the webinars. She admitted to using pain killers during her leave. When pressed for details, she was unable to state with certainty whether she participated in the webinars and whether or not she used her home computer. (Pl. Depo. Tr. at 134-38, 149-50.)

[5] Callahan admitted that he called Plaintiff on one occasion because he received an inquiry from an agency about a bill she submitted to that agency before her leave. (Deposition of Kenneth F. Callahan, ("Callahan Depo. Tr."), attached as Exhibit J to the Monte Cert. at 75-76.) He also admitted that when the fiscal crisis became known, he emailed Plaintiff to ask her when she would be back to work from her medical leave because he wanted to schedule a meeting with her and an employee from the fiscal department to discuss the imminent budget shortfall. (*Id*. at 77-78.)

9

that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Matteo v. Kohl's Dep't Stores, Inc.*, 2012 WL 760317, at *7 (S.D.N.Y. Mar. 6 2012) (granting summary judgment for defendant and concluding that the wheels on a display protruded no more than three inches into a shopping aisle, rather than the six to twelve inches suggested by plaintiff, as photographs in evidence contradicted plaintiff's testimony on the placement of the display).

Plaintiff's statements regarding the unwanted telephone calls are contradicted by the other evidence in the record, particularly, her own prior email communications. (Exs. U, V, W, X, Y, Z.) Defendant Callahan admitted to calling her once during her leave to seek clarification as to a bill that she had submitted to an agency, but otherwise did not call her and did not, at any time, ask her to report to work while she was on leave. (Deposition of Kenneth Callahan ("Callahan Depo. Tr."), attached as Exhibit J to the Monte Cert. at 75-79, 140, 160.) Further, each time that Defendants' counsel pressed Plaintiff about the contradiction between her statements regarding the telephone calls and her statements in the email, Plaintiff became non-responsive. (Pl. Depo. Tr. 119-21, 142-43.) Notably, Defendants' attorney requested that Plaintiff produce records from the account for her cellular phone to corroborate her claims that these calls occurred. (Pl. Depo. Tr. at 111-13.) Yet, there are no such records in the evidence in this case although Plaintiff had the ability to produce them and to rely on them to oppose Defendants' motion. Further, Plaintiff has not identified the dates or times of the unwanted calls and was unable to do so at her deposition. (Pl. Depo. Tr. at 108, 149.) Thus, Plaintiff has provided insufficient evidence to dispute the statements contained in her email, which reflect her requests to remain engaged in Heart Share's operations while on leave. *See Rosario v. Western*

*Regional Off Track Betting*, 2013 WL 4094510, at *4-5 (W.D.N.Y. Aug. 13, 2013) (granting summary judgment in employer's favor on FMLA interference claim as statements contained in employee's affidavit and deposition transcript did not refute other documents in evidence).

Finally, there is no evidence of a culture of non-compliance with requests for FMLA leave at Heart Share. Heart Share's employees regularly request and take FMLA leave. (*See* Heart Share's FMLA Leave Chart, attached as Exhibit F to the Monte Cert. ("Ex. F").) Plaintiff, herself, requested and took FMLA leave twice in the past without incident. (Pl. Depo. Tr. at 59-61, 41-43.)

Accordingly, for the reasons stated above, the Court grants Defendants' motion for summary judgment on Plaintiff's forced to work from home interference claim as no rational jury could find that Defendants' interfered with Plaintiff's FMLA leave.

### 2. Reinstatement

Plaintiff contends that Defendants interfered with her FMLA rights by failing to reinstate her to her position when she returned from leave. It is well settled that "the FMLA does not require an employer to reinstate an employee who would have lost his position even if he had not taken FMLA leave." *Sista*, 445 F. 3d at 175 (quotation marks omitted); 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement . . . than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."); *see also Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F. 3d 972, 979 (8th Cir. 2005) ("As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee

on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights.").

Turning to the instant action, Plaintiff returned to work January 17, 2012, when her doctor cleared her to return to work. (Pl. Depo. Tr. at 58-59.) The next day she was told that she would be laid off effective February 1, 2012, due to budget cuts. (*Id*. at 69-70.) Defendants have submitted ample evidence as to the budgetary constraints Heart Share faced in January 2012, which resulted in Heart Share reducing its workforce. (*See* Callahan Depo. Tr. 23-27, 34, 39-41, 55-63; 82-84; Deposition of Carole Smith-Njiiri ("Smith-Njiiri Depo. Tr."), attached as Exhibit L to the Monte Cert. at 17-18, 35; Heart Share's Employee Separation Chart, attached as Exhibit E to the Monte Cert.; Ex. Y.) Heart Share laid off seven employees in addition to Plaintiff, and lost other employees through attrition and termination. (Smith-Njiiri Depo. Tr. at 35; Ex. E.) Further, Plaintiff has not presented any evidence that Defendants failed to reinstate her because of her FMLA leave. Under these undisputed circumstances, Plaintiff's reinstatement claim must be dismissed.

B. **Retaliation**

Plaintiff contends that Defendants retaliated against her for taking FMLA leave by terminating her. To evaluate a retaliation claim arising under the FMLA, courts use the three-step burden-shifting analysis announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Potenza*, 365 F. 3d at 168. To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *See id*. The initial burden of establishing a prima facie case under *McDonnell Douglas* is "minimal."

*Schnabel v. Abramson*, 232 F. 3d 83, 87 (2d Cir. 2000); *Debell v. Maimonides Med. Ctr.*, 2011 WL 4710818, at *8-9 (E.D.N.Y. Sept. 30, 2011). If the plaintiff establishes a prima facie case, the burden then shifts to the defendants to articulate "some legitimate, non-discriminatory reason" for their action. *McDonell Douglas*, 411 U.S. at 802. If the defendants carry their burden, the plaintiff must prove by a preponderance of the evidence that defendants' legitimate reasons were not their true reasons, but were merely pretext for retaliation. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Turning to the instant action, the Court will assume, for purposes of this motion, that Plaintiff can meet the low threshold necessary to establish a prima facie case of retaliation. Notably, Plaintiff is only able to satisfy the fourth element because of the temporal proximity between her leave and her termination of employment. Plaintiff was on leave from December 19, 2011 through January 16, 2012. (Pl. Depo. Tr. at 58-59, 68.) Plaintiff returned to work on January 17, 2012 (Pl. Depo. Tr. at 58, 68), and was informed the following day that she would be laid off, due to budget costs, effective February 1, 2012 (Pl. Depo. Tr. at 69-71, 78). There is no other evidence in the record giving rise to an inference of retaliatory intent.

Defendants have come forward with a neutral reason for terminating her employment: Defendants faced an imminent funding shortage and were required to combine two district programs into one program, thereby reducing the workforce in half to account for the funding shortfall. (*See* Callahan Depo. Tr. 23-27, 34, 39-41, 55-63; 82-84; Smith-Njiiri Depo. Tr. at 17-18, 35; Ex. Y.) When Defendants decided to combine the two programs, they decided to have Wendy Margaret McClain supervise the remaining employees because she had experience with both former programs, whereas Plaintiff had experience with just one program. (Callahan Depo. Tr. at 67-68, 92-93, 96, 144, 149, 156.) Furthermore, McClain had the ability to assist her

subordinates with intake because she had a counseling license, which Plaintiff did not. (Callahan Depo. Tr. at 96-97, 144; Smith-Njiiri Depo. Tr. at 26, 39-41, 43.) Plaintiff was one of eight employees laid off in early 2012 as a result of the funding shortfalls. (*See* Smith-Njiiri Depo. Tr. at 17-18, 35.) Numerous other employees resigned, retired, or were terminated. (*See* Ex. E.) Courts have routinely recognized that economic factors that force an employer to downsize its staff constitute legitimate, non-retaliatory justification for an employment action. *See, e.g.*, *Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 623-24 (2d Cir. May 23, 2012) (summ. or.) (recognizing a company's downsizing of staff "due to the 2008 economic downturn" as one of the legitimate and non-discriminatory explanations for an employee's termination).

Plaintiff has not provided any evidence suggesting that the imminent budget shortfalls Heart Share experienced were merely pretext for discrimination. First, temporal proximity, alone, is insufficient to create a triable issue of fact as to pretext. *See Colombo v. East Irondequoit Cent. Sch.*, 2010 WL 6004378, at *14 (W.D.N.Y. Dec. 17, 2010) (citing *Simpson v. New York State Dept. of Civil Servs.*, 166 F. App'x 499, 502 (2d Cir. Jan. 9, 2006) (summ. or.)). Thus, although Plaintiff can satisfy the low burden of establishing her prima facie case by relying on temporal proximity, temporal proximity alone is not enough for her to overcome the Defendants' well documented, legitimate, non-discriminatory reason for her termination. Second, email correspondence indicates that Plaintiff was aware of the funding problems facing Heart Share before she left for her FMLA leave as she actively participated in submitting proposals for new sources of funding. (*See* Pl. Depo. Tr. at 44-45; Callahan Depo. Tr. at 82-84; *see also* Ex. Y.) Third, Plaintiff cannot overcome Defendants' neutral, well documented reason for her lay off with her assertions that Callahan called her and expressed anger for taking her FMLA leave. As set forth above, Plaintiff failed to present any evidence of the existence of the

calls between Callahan and her, and was unable to indicate the date or time of the calls. The email and other documentary evidence in the record demonstrates that Callahan contacted Plaintiff at least twice in connection to his coverage of her duties while she was on leave. Notably, Callahan implored Plaintiff to "REST" and told her that discussions of Heart Share's operations could wait until she returned from her leave.

This conclusion is bolstered by Plaintiff's actions after she was informed that she would be laid off, which show no concern regarding her FMLA rights. After learning about her termination, Plaintiff sought meetings with various officers at Heart Share to discuss a "compliance issue" related to the combining of funding of the two programs. (Pl. Depo. Tr. at 78-79, 88.) At her deposition, she testified that she felt that Callahan was lying to her about the funding issue and that she was terminated because he was "upset with [Plaintiff] because [she] went on medical leave." (Pl. Depo. Tr. at 79; 97-98, 101.) At her deposition, Plaintiff insisted that the emails that she sent various officers seeking meetings with them after her termination indicated that she felt that her FMLA rights had been violated. (Pl. Depo. Tr. at 79.) However, her emails discuss compliance generally and contain no references to the FMLA. (Pl. Depo. Ex. G.) Plaintiff refused to acknowledge that her emails did not inform Defendants of the purported FMLA violations. (Pl. Depo. Tr. at 91-94.) At one point, Plaintiff insisted that the act of copying the human resources department on an email to various officers at Heart Share that vaguely referred to "compliance" issues, constituted informing Defendants of their violation of her FMLA rights. (Pl. Depo. Tr. at 80, 95.)

Defendants' contemporaneous records, too, are void of any mention by Plaintiff of FMLA violations. Defendants have submitted a copy of a Memorandum that was circulated among Heart Share's upper management, which summarized Plaintiff's "compliance" allegations

as discussed in various meetings between Plaintiff and officers of Heart Share following her lay off. (*See* 2/2/12 Memorandum, attached as Exhibit N to the Monte Cert. ("Ex. N").) It is clear that Plaintiff raised a variety of issues in those meetings; however, there is no discussion of alleged FMLA violations. (*Id.*)

Under these circumstances, the Court concludes as a matter of law that Plaintiff cannot meet her burden to establish her FMLA retaliation under *McDonnell Douglas*. Accordingly, summary judgment is granted in Defendants' favor on Plaintiff's FMLA retaliation claim.

### III. Claims Alleging Violations of the NYCHRL

The "traditional values of judicial economy, convenience, fairness, and comity" weigh in favor of declining to exercise supplemental jurisdiction when all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F. 3d 118, 122 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having granted summary judgment in Defendants' favor on all of the federal claims in this case, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. *See id.* (citing 28 U.S.C. § 1367(c)(3)).

### CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted and the complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      March 27, 2014

                                            /s/
                                    DORA L. IRIZARRY
                                United States District Judge